IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN LIVINGSTON<br>2485 Featherston Dr.<br>Miamisburg, Ohio, 45342 | )<br>)<br>) | CASE NO:<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| YANA TRANSPORT, LLC<br>550 S Cleveland Ave Ste G<br>Westerville, OH 43081 | )<br>)<br>)<br>) | **(Jury Demand Endorsed Herein)** |
| **Please serve also**:<br>Oleksiy Petroshenko, Statutory Agent<br>292 Postage Circle<br>Pickerington, Ohio, 43147 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant | ) | |

Plaintiff, Maureen Livingston, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## PARTIES

1. Livingston is a resident of the city of Miamisburg, county of Montgomery, state of Ohio.

2. Yana Transport, LLC ("Yana") is a domestic limited liability corporation with its principal place of business located in Westerville, Ohio.

## PERSONAL JURISDICTION

3. Yana hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Yana comports with due process.

4. Livingston performed work in this judicial district, was unlawfully denied wages owed to her by Yana pursuant to work performed in this district and/or was hired out of this district.

5. This cause of action arose from or relates to the contacts of Yana with Ohio residents, thereby conferring specific jurisdiction over Yana.

## SUBJECT MATTER JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), 26 U.S.C. § 7434, and 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Livingston' state law claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Ohio Constitution, and Ohio R.C. § 4112.02, *et seq*. because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this District because Yana do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

9. At all times referenced herein, Yana formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

10. During all times material to this Complaint, Yana was Livingston's "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

11. At all times referenced herein, Livingston was subject to individual coverage under the FLSA because her job duties required her to travel across state lines and/or to operate vehicles weighing under 10,000lbs on interstate roads and highways.

## FACTUAL ALLEGATIONS.

1. Yana provides non-emergency, medical transportation services in central Ohio.

2. Livingston is a female.

3. Livingston is a former employee of Yana.

4. Livingston was hired by Yana as a Driver in or around October of 2020.

5. At the time Yana hired Livingston, they promised to pay her $12.00 per hour for her work as a Driver.

6. During Yana's employment with Yana, she was customarily paid $12.00 per hour.

7. In or around early March, 2021, Livingston received a raise of $0.50 per hour, to $12.50 per hour.

8. Subsequently, Livingston was injured when she attempted to prevent a large patient from falling out of a wheelchair ("Patient").

9. Livingston is short, at only 4'11 tall.

10. Livingston weighs approximately 130lbs.

11. The Patient is approximately 6'5 and weighs close to 300lbs.

12. The Patient crushed Livingston when he fell on her, causing her to suffer strains and contusions in her back.

13. Livingston filed a Worker's Compensation claim after she was injured by the Patient.

14. Subsequently, Livingston began seeing a chiropractor to treat her injuries.

15. From time to time, Livingston would miss work for physical therapy appointments related to her Worker's Compensation claim.

16. John permitted Livingston to miss work from time to time for physical therapy appointments related to her Worker's Compensation claim.

17. At all times referenced herein, Livingston was supervised by managers named "John" (last name unknown) and Mike (last name unknown).

18. Shortly after Livingston filed her claim for Worker's Compensation benefits, she noticed that John became cold towards her and began to speak to her in a constantly annoyed and curt manner.

19. Shortly after Livingston filed her claim for Worker's Compensation benefits, John began to pick on her and to criticize her work.

20. During the evening of June 22, 2021, Livingston's pet dog, Oreo, had a medical emergency.

21. Livingston took Oreo to an Animal Hospital for emergency treatment.

22. Livingston was scheduled to work the morning of June 23, 2021.

23. At approximately 9:25pm, Livingston sent Mike a text message notifying him that she was at the animal hospital with Oreo and that she did not know how long she would be there or if she would be fit to drive on June 23, 2021.

24. At 12:11am on June 23, 2021, Livingston sent Mike another text message notifying him that she would need to call off her shift for that day because she was still at the hospital with Oreo.

25. Livingston also sent John a text message notifying him that she was still at the Animal Hospital and would need to call off for June 23, 2021.

26. Oreo did not survive his medical emergency and passed away a few days after his medical emergency.

27. Livingston was at the Animal Hospital until approximately 2:30am with Oreo before he passed away.

28. John responded to Livingston's 12:11am text message at 5:49am.

29. John terminated Livingston through his 5:49am text message and demanded that Livingston return Yana's vehicle by 7:00am.

30. John threatened to report Yana's vehicle as stolen if Livingston did not return the vehicle by 7:00am.

31. In terminating Livingston, John treated Livingston differently than other Yana employees who had not filed Worker's Compensation claims.

32. Other employees of Yana did and have called off from work the night before, for example, on the account of illness, without being terminated.

33. Livingston did not have a record of poor attendance prior to calling off work on June 23, 2021.

34. Livingston had never been written up or disciplined for her attendance prior to her termination.

35. Livingston had never called off of work prior to June 23, 2021.

36. Subsequently, John left Livingston a threatening voicemail in which he admitted that he was terminating her because of her Worker's Compensation claim, which John described as "fake":

> If you do not call by 7am I will be contacting the police, you are legally…reliable [sic] for that vehicle. And if you don't show up to work, you have to bring the vehicle to my house if your not going to show up to work. Now, I don't care if the world opened up and the entire…universe is

5

> collapsing on itself, you still have to bring me the vehicle, do you understand that? That's your most important thing in the world because you're legally responsible for a $16,000 car. Now, I will charge you for that $16,000 if I don't see that vehicle. You screwed me over (unintelligible)…you had more vacation than work days this entire year…**you made up excuses, you made up a fake injury. Chiropractors are not real doctors, so whatever you brought me from that doctor is not real, I just went along with it, do you understand??!!**

37. Chiropractors are "real doctors."

38. Livingston had not used more vacation days than she had worked in 2021.

39. Livingston's last paystub prior to her termination showed that she still had 40 hours of vacation time remaining.

40. As admitted by John, Livingston was terminated in retaliation for filing a Worker's Compensation claim.

41. At 7:29am, Livingston sent Mike a text message stating that she would leave the keys in Yana's car and provided an address where it could be picked up.

42. On or about June 25, 2021, Livingston received her paycheck for the hours she worked between June 6, 2021 and June 19, 2021 ("June 25 Paycheck").

43. Without prior agreement from Livingston, Yana reduced Livingston's hourly pay from $12.50 per hour to $8.80 per hour.

44. The June 25 Paycheck had a "memo" note on it stating that "$350.00 vehicle retrieval fee will be applied upon vehicle recoupment."

45. Subsequently, Yana picked up its vehicle from Livingston.

46. Livingston had worked on June 21, 2021.

47. Livingston had worked on June 22, 2021.

48. Livingston was never paid by Yana for the hours she worked on June 21, 2021 and June 22, 2021.

49. Upon information and belief, Yana did not pay Livingston because it applied the $350.00 "vehicle retrieval fee" to her final paycheck, which would have been less than $350.00.

50. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Livingston has suffered loss of earnings, earnings potential, raises, and other significant economic benefits.

### COUNT I: WORKER'S COMPENSATION RETALIATION.

51. Livingston restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

52. In retaliation against Livingston's for filing a claim for Worker's Compensation benefits, Yana terminated Livingston.

53. Within 90 days of her termination, Livingston provided written notice to Yana of her intent to pursue a Worker's Compensation retaliation claim by U.S Mail and by email with read receipt to YanaTransportation@Gmail.com.

54. Livingston is therefore entitled to recover damages from Defendants for their wrongful termination of her in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

55. As a direct and proximate cause of Defendants' wrongful conduct, Livingston has suffered and will continue to suffer damages.

### COUNT II: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA (29 U.S.C. § 206).

56. Livingston restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

7

57. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

58. As a result of Yana's failure to pay Livingston for the work she performed on June 21 and June 22, 2021, Yana paid Livingston less than the minimum wage.

59. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

60. Defendants' failure and refusal to pay Livingston at least the minimum wage for all hours Livingston worked was willful, intentional, and not in good faith.

61. Livingston is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT III: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.02, *et seq*, BASED ON FAILURE TO PAY MINIMUM WAGE.**

62. Livingston incorporates by reference the allegations in the preceding paragraphs.

63. The OMFWSA requires that covered employees be compensated for every hour worked in a workweek including payment of all earned overtime compensation. See O.R.C. §§ 4111.01, et seq.

64. Yana violated the OMFWSA by failing to pay Livingston wages approximating at least the Ohio minimum wage for all hours worked by Livingston.

65. As a direct and proximate result of Yana's unlawful conduct, Livingston has suffered and will continue to suffer a loss of income and other damages.

66. Having violated the OMFWSA, Yana liable to Livingston pursuant to O.R.C. § 4111.10 for the full amount of her unpaid minimum wages; liquidated damages; and for Livingston's costs and reasonable attorneys' fees.

### COUNT IV: BREACH OF IMPLIED CONTRACT.

67. Livingston restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Yana offered Livingston $12.50 per hour in exchange for her agreement to work for Yana as a Driver.

69. Livingston accepted Defendant's offer of employment and promised rate of pay ("Implied Employment Agreement").

70. The Implied Employment Agreement between Livingston and Yana was oral and was never reduced to writing.

71. The Parties operated under the terms of the Implied Employment Contract until Yana unilaterally paid Livingston $8.80 per hour instead of $12.50 per hour for work that Livingston had performed between June 6, 2021 and June 19, 2021.

72. Livingston never agreed to work for a rate of $8.80 per hour.

73. Livingston performed her job duties pursuant to the Employment Agreement.

74. Yana breached the Employment Agreement by failing to pay Livingston as agreed.

75. As a result of Yana' Breach of the Employment Agreement, Livingston suffered damages.

### COUNT V: UNJUST ENRICHMENT.

76. Livingston restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Livingston provided value to Yana by performing work for them.

78. Livingston expected to receive the $12.50 per hour that Yana promised her in exchange for her work during the pay period of June 6, 2021 and June 19, 2021.

79. Yana acknowledged, accepted, and benefited from the value provided to them by Livingston.

80. It would be inequitable for Yana to enjoy the benefit of the value provided by Livingston without compensating Livingston as agreed in the Implied Employment Agreement.

### COUNT VI: PROMISSORY ESTOPPLE.

81. Livingston restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. Yana made a clear and unambiguous promise to Livingston to pay her $12.50 per hour in exchange for her work.

83. Livingston relied upon Yana' promise of $12.50 per hour in agreeing to work; had Yana notified Livingston that she would only be paid $8.80 per hour, Livingston would have sought other employment.

84. Livingston relied upon Yana' promise of $12.50 per hour in agreeing to work for Yana instead of seeking other employment.

85. Livingston's reliance on Yana' promise of $12.50 per hour was reasonable and was foreseeable to Yana.

86. As a result of Defendant's failure to pay Livingston as agreed, Yana caused Livingston to suffer damages, and injustice can only be avoided by the enforcement of Yana' promise.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Maureen Livingston requests judgment against Defendant Yana Transportation, LLC and for an Order:

(a) Awarding Plaintiff compensatory and monetary damages against Yana to compensate Plaintiff for lost wages, unpaid wages, emotional distress, and other consequential damages in an amount exceeding $25,000.00;

(b) Awarding Plaintiff all unpaid wages for the hours she worked for Yana pursuant to her implied contract of employment with Yana;

(c) Upon a finding of liability under the FLSA or the Ohio Constitution, awarding Plaintiff reasonable attorneys' fees and non-taxable costs for Plaintiffs' claims pursuant to O.R.C. § 2721.16(b).

(d) Awarding the taxable costs of this action; and

(e) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Chris.Wido@spitzlawfirm.com

*Attorney for Plaintiff Maureen Livingston*

## **JURY DEMAND**

Plaintiff Maureen Livingston demands a trial by jury by the maximum number of jurors permitted.

>*/s/Chris P. Wido*
>Chris P. Wido (0090441)
>**THE SPITZ LAW FIRM, LLC**